UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-001-TBR

RUSSELL B. MULLINS,                                                                        PLAINTIFF

v.

MATTHEW JOHNSTON, *et al.*,                                                         DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Johnston's[1] Motion for Summary Judgment, filed on August 18, 2017. [R. 23.] On October 16, 2017, after Mullins had not responded, the Court published an order allowing him thirty more days to respond. [R. 26 at 2.] The Court also stated: "Should Plaintiff fail to file a response within the time allotted, the Court will take the motion under consideration without the benefit of Plaintiff's response." [*Id*.] Five months later, the Court has still not received a response from Mullins. Thus, the Court will now take the Motion for Summary Judgment under consideration without the benefit of Mullins's response. For the reasons stated herein, Johnston's Motion for Summary Judgment, [R. 23], is GRANTED.

**BACKGROUND**

Russell Mullins arrived at Christian County Jail as an inmate in January of 2016. [R. 7 at 4 (Amended Complaint).][2] On January 27, 2016, Mullins submitted a Sick Call Request Form, in which he requested diabetes and heart medications, as well as lotion for a vein issue with his left leg. [R. 23-2 at 1 (Sick Call Request Form).] Johnston submitted a Medical Progress Note, dated

---

[1] It appears that the defendant's name was spelled incorrectly as "Johnson" on the captions for previous memoranda.
[2] The parties disagree about whether the exact date of Mullins's incarceration at Christian County Jail was January 27, 2016 or January 28. *See* [R. 23-1 at 1, n. 2; R. 7 at 4.]

1

January 28, 2016, detailing what appears to be a visit by a nurse,[3] in which Mullins's blood pressure, pulse and temperature were recorded and the nurse confirmed his need for insulin, lotion, and other medications. [R. 23-3 (Medical Progress Note).] The form is signed by Matthew P. Johnston as the practitioner. [*Id*.]

Mullins claims that Matthew Johnston has not given him a physical or performed blood work since Mullins first came to Christian County Jail in January of 2016. [R. 7 at 4.] Mullins states that both of these procedures are necessary for treating his type 2 diabetes. [*Id*.] Mullins recounts that on four different occasions, May 11, 2016, September 23, 2016, November 24, 2016, and December 24, 2016, his blood sugar levels fell to a life threatening range after he was administered "high dosages of R (rapid) type insulin" in the morning and sent back to his cell without being monitored afterwards. [*Id*. at 4-5.] Mullins states that Johnston never examined him after any of these incidents. [*Id*.]

The Medication Log Forms and Medication Administration Records submitted by Johnston detail a procedure in which Mullins was seen twice a day, once in the morning and once in the evening. [*See, e.g.,* R. 23-5 (January/February Medication Log Form); R. 23-6 (Medication Administration Records).] If Mullins allowed it, his blood sugar was tested and he was administered insulin and other medications. [*Id*.] According to the jail's records, Mullins refused either to have his blood sugar checked or to be administered a dose of insulin on many occasions from March of 2016 to January of 2017, including the morning of November 24, 2016, [R. 23-16 at 25 (November Refusal of Treatment Form)].[4] As of March of 2017, Mullins is no longer imprisoned at Christian County Jail. [R. 14 at 1 (Notice of Change of Address).]

---

[3] A box at the top of the form labelled "Nurse" is checked. However, the signature of the nurse at the bottom of the form is illegible. [R. 23-3.]
[4] The Medication Log Forms also reveal that Mullins refused to take the medication Metformin on the morning of September 23, 2016, [R. 23-14 at 16 (September Refusal of Treatment Form)], the morning of November 24, 2016,

On January 30, 2017, Mullins filed a pro se, verified, Amended Complaint under 42 U.S.C. § 1983, in which he made a claim of deliberate indifference to his serious medical needs. [R. 7.] On August 18, 2017, Johnston filed the Motion for Summary Judgment that is before the Court. [R. 23.]

**STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the plaintiff's claims. FED. R. CIV. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the defendant satisfies his or her burden of production, the plaintiff "must—by deposition, answers to interrogatories, affidavits, and

---

[R. 23-16 at 25], and the evening of December 24, 2016, [R. 23-17 at 42]. Furthermore, he refused to be administered insulin on the evening of December 24, 2016 at 1700 hours. [*Id.* at 41.]

admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

Johnston provides three different reasons for why the Court should grant his Motion for Summary Judgment: First, Johnston argues that Mullins's claims are barred by the PLRA because he did not exhaust all available administrative remedies before he filed this action. [R. 23-1 at 4.] Second, Johnston argues that Mullins's claims are also barred by the PLRA because he did not identify a physical injury. [*Id.*] Lastly, Johnston argues that summary judgment should be granted because Mullins's Eighth Amendment rights have not been violated due to deliberate indifference by Johnston. [*Id.*][5] The Court will address each argument in turn.

**A. The PLRA**

The PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Exhaustion is mandatory and the

---

[5] Johnston also argues that since Mullins failed to answer his Requests for Admission, they are deemed as admitted. [R. 23-20 (Johnston's Discovery Requests)]. Those requests include "that [Mullins] did not suffer a physical injury, [Mullins] received adequate medical care and Johnston did not have a reckless disregard of a substantial risk of serious physical harm." [R. 23-1 at 4.] Granted, Federal Rule of Civil Procedure 36(a)(3) instructs that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FED. R. CIV. P. 36. However, these requested admissions directly contradict the arguments at the core of Mullins's verified Complaint. [*See* R. 7.] In the end, the Court has granted Johnston's Motion for Summary Judgment on the merits, and, therefore, finds it unnecessary to rule on this matter at this time.

remedies provided "need not meet federal standards, nor must they be 'plain, speedy, or effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), and so "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," *Jones v. Bock*, 549 U.S. 199, 218 (2007); *accord Lee v. Wiley*, 789 F.3d 673, 677 (6th Cir. 2015). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants . . . Because the defendants moved for summary judgment on this defense, it was their burden to show that there was an absence of evidence to support the nonmoving party's case." *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citations omitted).

As an inmate of a prison that has a grievance procedure, Mullins was required by the PLRA to exhaust the remedies available to him through that procedure before filing this action. *See Porter*, 534 U.S. at 524, 532; *Jones*, 549 U.S. at 218. Mullins provided no evidence of any attempt to file a grievance with Christian County Jail, nor did he file a response in order to dispute Johnston's allegation that he failed to do so. Specifically, Johnston asserts that Mullins never filed a grievance concerning Johnston, and he provided an affidavit from the Christian County Jailer, Bradley Boyd, as support. [R. 23-1 at 7.] The affidavit states that the Christian County Jail had a written grievance procedure that was "in full force, effect and use" at the time of Mullins's incarceration. [R. 23-19 at 1 (Boyd Affidavit).] Furthermore, the Grievance Procedure articulates that it is "available to all inmates." [R. 23-19 at 2 (Grievance Procedure).] With no evidence in the record to dispute that the grievance procedure was available to Mullins

5

yet he still failed to use it, the Court finds that Mullins failed to exhaust available administrative remedies.

Johnston argues that Mullins's claims should also be barred by the PLRA due to his failure to provide evidence showing that he suffered a physical injury due to inadequate medical care. [R. 23-1 at 7.] In Mullins's verified Complaint, he stated that he went into a "catatonic state" and endured blood sugar levels that dropped to "life threatening levels." [R. 7 at 5.] The Court finds that it is not necessary to analyze this issue at this time as it already found that Mullins failed to exhaust available administrative remedies under the PLRA.

### B. Eighth Amendment Violation

In his Complaint, Mullins claims that Johnston's failure to give him a physical or perform bloodwork is "proof of negligence and malpractice." [R. 7 at 4.] Furthermore, he claims that he was given high dosages of insulin resulting in low blood sugar levels that were life threatening. [*Id.*] The Court agrees with Johnston's interpretation of the Complaint to be a deliberate indifference claim under the Eighth Amendment to the United States Constitution. [R. 23-1 at 8.] The Eighth Amendment prohibits "cruel and unusual punishments . . .." U.S. CONST. AMEND. VIII. Under the Eighth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

A deliberate indifference claim under the Eighth Amendment has both an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir. 2001). The Sixth Circuit described the details of both components in *Comstock v. McCrary*:

> To satisfy the objective component, the plaintiff must allege that the medical need at issue is "sufficiently serious." To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted

that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (internal citations omitted).

*Id*. Furthermore, the Sixth Circuit has stated:

In evaluating a deliberate indifference claim, "[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all."

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976) (internal citations omitted).

First, in regards to the objective component, the Court finds Mullins's medical need to be "sufficiently serious." Mullins must receive insulin twice a day for his diabetes. [*See, e.g.,* R. 23-7.] Mullins claims that an incorrect dosage of insulin nearly ended his life on four different occasions. [R. 7 at 4-5.] The Sixth Circuit encountered a similar situation in *Garretson v. City of Madison Heights*, where it held that the plaintiff's condition as a diabetic was sufficiently serious when she did not receive her insulin injections at the required intervals, resulting in a several day stay at the hospital. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). Here, Mullins also requires regular injections of insulin and claims that he nearly died when the prison gave him the incorrect dosage. [R. 7 at 4-5.] Thus, the Court finds that Mullins's claims satisfy the objective component.

Secondly, under the subjective component, Mullins must allege facts showing that Johnston "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*,

7

273 F.3d at 702–03. Mullins alleged no such facts. On the subject of the four instances when his blood sugar levels fell dangerously low, Mullins states in his verified Complaint: "I find it highly unlikely that nurse Lizzie Lenniz didn't report these incedents [sic] to Dr. Johnson [sic]." [R. 7 at 5.] However, this statement amounts to speculation, not facts or evidence. Thus, the Court finds that Mullins did not establish the Subjective Component of a deliberate indifference claim.

Lastly, as the Sixth Circuit has stated that it distinguishes between cases alleging "a complete denial of medical care" and those alleging "inadequate medical treatment," the Court finds that Mullins case falls under the latter. *Alspaugh*, 643 F.3d at 169. At the beginning of his complaint, Mullins alleges that Johnston's failure to perform a physical or bloodwork was "proof of negligence and malpractice." [R. 7 at 4.] Isolating this allegation on its own, the Sixth Circuit has stated that "[c]omplaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief . . .." *DeFreeze v. Zuberi*, 39 F. App'x 137, 139 (6th Cir. 2002) (citing *Estelle*, 429 U.S. at 105-06). Even if one includes Mullins' criticism that Johnston should have examined him after his alleged low blood sugar episodes, all three of these claims amount to more of a difference of opinion regarding his treatment rather than a total denial of medical care. Similarly, in *Palmer v. Lane*, the Sixth Circuit held that the plaintiff's claim of inadequate medical treatment of his diabetes while incarcerated only amounted to "a difference of opinion with respect to the treatment he received" when his leg had to be amputated due to poor circulation. *Palmer v. Lane*, 22 F. App'x 532, 533 (6th Cir. 2001) (citing *Estelle*, 429 U.S. at 107). As in *Palmer*, the Court holds that it will not "second guess medical judgments" here.

In sum, the Court finds that Mullins failed to show that his Eighth Amendment rights were violate due to deliberate indifference to his serious medical needs.

## CONCLUSION

For the foregoing reasons, Johnston's Motion for Summary Judgment, [R. 23], is **GRANTED**. In the Court's Order from October 16, 2017, the Court stated: "Upon review of Defendant Johnson's [sic] motion for summary judgment, if the motion were to be granted, it would apply equally to Defendant Lenniz." [R. 26 at 1 n.1.] As the motion is granted, it is applied equally to Defendant Lenniz. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc: Counsel of Record

Russell B. Mullins, pro se
280794
Luther Luckett Correctional Complex
P.O. Box 6
Dorm 7c
LaGrange, KY 40031